**ARIZONA CENTER FOR LAW
IN THE PUBLIC INTEREST**
2205 E. Speedway Blvd.
Tucson, Arizona  85719
(520)529-1798
(520)529-2927 (fax)

Attorneys for plaintiffs
Joy E. Herr-Cardillo (009718)
Timothy M. Hogan (004567)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra L. Bahr, Diane E. Brown, and David Matusow, | ) Case No.: |
| | ) |
| Plaintiffs, | ) |
| | ) COMPLAINT |
| vs. | ) |
| | ) |
| Lisa Jackson, in her official capacity as Administrator of the United States Environmental Protection Agency, and the United States Environmental Protection Agency. | ) |
| | ) |
| Defendants. | ) |

Plaintiffs, by and through their attorneys, the Arizona Center for Law in the Public

Interest, for their Complaint against defendants allege as follows:

NATURE OF ACTION

1.     This is an action to compel the United States Environmental Protection

Agency and its Administrator (collectively "the Administrator") to perform

nondiscretionary duties under the Clean Air Act (the "Act").  Specifically, the

Administrator has a duty to act upon the "MAG 2007 Five Percent Plan for PM-10 for the

Maricopa County Nonattainment Area," Maricopa Association of Governments, 2007

("5% Plan") which was submitted by the State of Arizona.  The Administrator has failed to take action on the 5% Plan as required by 42 U.S.C. §7410(k)(2).

## JURISDICATION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 42 U.S.C. §7604(a)(2), 28 U.S.C. §1331, 28 U.S.C. §§2201 and 2202, and 28 U.S.C. §1361.  Venue lies in the District of Arizona, pursuant to 28 U.S.C. §§1391(b) & (e) and Rule 1, Rules of Practice for the United States District Court for the District of Arizona, because the cause of action arises in the District of Arizona.

## ADMINISTRATIVE PREREQUISITE TO THE FILING OF THIS ACTION

3.      On August 10, 2009, plaintiffs served notice on the Administrator of the matters complained of herein pursuant to 42 U.S.C. §7604(b) and 40 C.F.R. §§54.1-3.

## PARTIES

4.      Plaintiffs Sandra L. Bahr, Diane E. Brown, and David Matusow live, work recreate, and own property in  "Area A," an area encompassing metropolitan Phoenix (hereinafter referred to in this Complaint as "Phoenix") that has been designated by the Administrator as "serious nonattainment" in failing to meet federal health and welfare standards for airborne particulates.  Levels of airborne particulates in Phoenix threaten, and are anticipated to threaten the health and welfare of Bahr, Brown, Matusow and the public.  Bahr, Brown and Matusow are adversely affected by being forced to breathe air in Phoenix that is less pure than required under the Act with respect to particulates.  The excessive levels of particulate pollution in Phoenix threaten the health, welfare, and economic well-being of Bahr, Brown, Matusow, their families and the public.

5.      The Administrator's failure to timely perform the nondiscretionary duties complained of herein adversely affects Bahr, Brown and Matusow, and deprives them of health, welfare, and procedural protections to which they are entitled under the Act.  The relief sought herein would redress those injuries.

6. Defendant Lisa Jackson is the Administrator of the United States Environmental Protection Agency ("EPA"), and is sued in her official capacity. Defendant U.S. Environmental Protection Agency is an agency of the United States.

## GENERAL ALLEGATIONS

7. The Clean Air Act establishes a comprehensive scheme to protect the public from air pollution. The Act requires the Administrator to set National Ambient Air Quality Standards (NAAQS) for certain air pollutants, including particulates. The standards establish concentrations of each pollutant allowable in the ambient air.

8. The NAAQS must be stringent enough to prevent adverse effects on public health and welfare. Effects on welfare include, but are not limited to, effects on soils, water, vegetation, manmade materials, wildlife, visibility, damage to property, economic impacts, and effects on personal comfort and well-being.

9. Pursuant to the Act, in 1987 EPA adopted NAAQS for airborne particulates. These standards limit concentrations of airborne particulates that are 10 micrometers or smaller in diameter, and are referred to as the $PM_{10}$ NAAQS. The $PM_{10}$ NAAQS were intended by EPA to protect public health and welfare.

10. EPA promulgated two separate NAAQS for $PM_{10}$, the annual standard and the 24-hour standard. The 24-hour standard offers protection against dangerous short term exposures to high $PM_{10}$ levels. The annual standard offers protection against chronic degradation of lung function.

11. Pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. §7407(d)(4)(B), on November 15, 1990 Phoenix was designated by operation of law as a "nonattainment area" for $PM_{10.}$ A $PM_{10}$ nonattainment area is one that does not meet the NAAQS for $PM_{10}$.

12. Pursuant to section 188(a) of the Act, 42 U.S.C. §7512(a), on November 15, 1990, Phoenix was classified as a "moderate" $PM_{10}$ nonattainment area.

13.     When Phoenix failed to achieve attainment by the attainment deadline of December 31, 1994, pursuant to section 188(b) of the Act, 42 U.S.C. §7512(b), on May 10, 1996, EPA reclassified Phoenix as a "serious" $PM_{10}$ nonattainment area. 61 Fed Reg. 21372.

14.     Pursuant to section 189(b)(2) of the Act, 42 U.S.C. §7513a(b)(2), the State of Arizona was required to submit a serious area plan addressing both the 24-hour and annual $PM_{10}$ NAAQS for Phoenix by December 10, 1997.  This plan, referred to in the Act as a state implementation plan ("SIP"), was to include specific control measures to reduce $PM_{10}$ pollution.  Among other things, the Act required the SIP to ensure that all best available control measures for the control of $PM_{10}$ would be implemented by May 10, 2000. 42 U.S.C. §7513a(b)(1)(B).  The Act further required the SIP to contain a demonstration either that the plan would produce attainment of the $PM_{10}$ NAAQS by December 31, 2001 or that attainment by that date was impracticable.  42 U.S.C. §§7502(c)(1), 7513(c)(2), and 7513a(b).  The Act required the SIP to include numerous other provisions to promote attainment and maintenance of the $PM_{10}$ NAAQS, and to be adopted after public notice and hearing.  See, e.g. 42 U.S.C. §7410(a), 7502(c), 7513a(c).

15.     The Serious Area $PM_{10}$ Plan ("SAPP") was first submitted on July 8, 1999. EPA found the plan "complete" on August 4, 1999 but in November 1999, EPA notified the state that additional work needed to be done in order for EPA to approve it. Consequently, on February 23, 2000, the state submitted a revised SAPP, which was found "complete" by EPA on February 25, 2000.

16.     On April 13, 2000, EPA proposed to approve the Serious Area PM10 plan for the annual standard, but took no action on the 24 hour standard.  Consequently, in May 2001, plaintiffs Bahr and Matusow filed a citizen suit in U.S. District Court on behalf of Phoenix residents to compel EPA to take action. *Bahr v. Whitman*, CIV 01-0835 PHX ROS (D. Ariz.)  The parties entered into a Consent Decree requiring EPA to

take action on the 24 hour standard on or before September 14, 2001, and to approve or

disapprove the entire plan by January 14, 2002. *Id.*, consent decree entered October 2,

2001.

17.     On Thursday, July 25, 2002, EPA published its final approval of the SAPP.

The approval also granted the Phoenix area the maximum five year extension of the

attainment deadline, giving the area until December 31, 2006 to come into compliance

with the NAAQS.

18.     Residents of the Phoenix area filed a Petition for Review of the SAPP with

the Ninth Circuit Court of Appeals. *Vigil v. Leavitt,* 381 F. 3d 826 (9th Cir. 2004).  In

ruling on that Petition, the Ninth Circuit held that EPA's approval of the SAPP was

arbitrary and capricious and remanded the action to the EPA for further consideration of

whether Arizona's decision to reject requiring "clean" diesel fuel as an emissions control

measure satisfied the Clean Air Act's requirement that the plan include "best available

control measures" (BACM) and "most stringent measures" (MSM).  The Court also

remanded the question of Arizona's eligibility for the extension of the attainment deadline

insofar as that question depended on EPA's determination regarding MSM.

19.     In June 2005, EPA proposed to reapprove the BACM and MSM

demonstrations and finalized the reapproval in July 2006.  Phoenix residents again

petitioned for review, however, that action was resolved through a voluntary remand

when it became apparent that the state would not be able to meet the extended December

31, 2006 deadline for attainment.

20.     In March 2007, EPA filed a proposed finding of nonattainment and the

final notice of nonattainment was published on June 6, 2007 (72 Fed. Reg. 31183).

21.     Under section 189(d) of the CAA, serious PM-10 nonattainment areas that

fail to attain are required to submit within 12 months of the applicable attainment date,

"plan revisions which provide for attainment of the PM-10 air quality standard and, from

the date of such submission until attainment, for an annual reduction in PM-10 or PM-10 precursor emissions within the area of not less than 5 percent of the amount of such emissions as reported in the most recent inventory prepared for such area."  42 U.S.C. §7513a(d).

CLAIM FOR RELIEF

(The Administrator's Failure to Act on the 5% Plan)

22.     Plaintiffs incorporate by reference paragraphs 1 through 21 as though fully set forth herein.

23.     Arizona submitted its 5%  plan to EPA by the December 2007 deadline.

24.     Pursuant to section 110(k)(1)(A) of the Act, 42 U.S.C. §7410 (k)(1)(A), the Administrator has promulgated minimum criteria (completeness criteria) that any plan submission must meet before the Administrator is required to act on the submission.

25.     EPA had six months, or until June 30, 2008 to find the plan "complete." 42 U.S.C. §7410(k)(1)(b).  Because EPA did not take action by that date, the plan was deemed "complete" by operation of law.  *Id.*

26.     Pursuant to section 110(k)(2) of the Act, within 12 months of a determination by the Administrator that a state has submitted a plan or plan revision that meets the minimum criteria, the Administrator shall act on the submission in accordance with section 110(k)(3), which section requires the Administrator to approve or disapprove a plan, in whole or in part.  42 U.S.C. §7410(k)(2), (3).  Therefore, the Administrator had until June 30, 2009 to approve or disapprove the 5% Plan.

27.     No proposed or final action has been taken on the 5% Plan by the Administrator.

28.     Thus, the Administrator is in violation of her nondiscretionary duty pursuant to section 110(k)(2) to take action on a plan submission.  The Administrator's

violation of such nondiscretionary duty is ongoing.  Plaintiffs are informed and believe that such violation will continue unless enjoined by order of this Court.

29.    Plaintiffs are suffering and will suffer irreparable harm because of the Administrator's failure to timely perform her nondiscretionary duty to take action on the submitted 5% Plan.

30.    For all of the foregoing reasons, plaintiffs are entitled to an order of this Court directing the Administrator to either approve or disapprove, in whole or in part, the 5% Plan as soon as possible on a specific timetable.

WHEREFORE, plaintiffs respectfully request that the Court:

A. Declare that the Administrator is in violation of her nondiscretionary duty under section 110(k)(2) of the Act, 42 U.S.C. §7410(k)(2), to take action on the 5% Plan within 12 months of finding it complete;

B. Issue a mandatory injunction requiring the Administrator to perform her nondiscretionary duty under section 110(k)(2) of the Act to take action on the submitted plan, and specifically ordering the Administrator to:

      i.     Immediately commence rulemaking to approve or disapprove in whole or in part, the 5% Plan.

      ii.    Publish in the Federal Register a proposed rule approving or disapproving the 5% Plan within 1 month;

      iii.   Publish and promulgate a final rule approving or disapproving the 5% Plan in the Federal Register within 3 months;

C. Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

D. Grant plaintiffs their reasonable costs of litigation, including their attorney's and expert witness fees; and,

E.  Grant such further relief as the Court deems just and proper.

Dated this 2nd day of December, 2009.

Arizona Center for Law
In the Public Interest
2205 E. Speedway Blvd.
Tucson, AZ  85719


s/ Joy E. Herr-Cardillo
Joy E. Herr-Cardillo
Timothy M. Hogan